UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KIM BLANDINO,

Plaintiff,

v.

DOUGLAS HERNDON, *et al.*,

Defendants.

Case No. 2:18-cv-00600-MMD-VCF

ORDER

**I.    SUMMARY**

*Pro se* Plaintiff Kim Blandino sued Defendant Douglas Herndon, a sitting Nevada state court judge, under 42 U.S.C. § 1983 for telling Plaintiff to sit down and be quiet after Plaintiff attempted to intervene in a criminal hearing Herndon was conducting—to which Plaintiff was neither party nor counsel. In this same suit, Plaintiff also sued Defendant Dr. Jeffrey Weinberger, a Connecticut doctor who allegedly signed the death certificate of the famous actor Gene Wilder, for declining to make public statements that Gene Wilder died of renal failure, and not complications from Alzheimer's disease, as was allegedly widely reported in the papers. (ECF No. 1.) Herndon has moved to dismiss the claims against him on standing and judicial immunity grounds. (ECF Nos. 10; 15 (response); 17 (reply).) For the reasons explained below, the Court agrees with Herndon and will dismiss the claims against him. Weinberger has not appeared in this case, and the Clerk of Court entered a default against him. (ECF No. 21.) Nonetheless, as also explained in more detail below, the Court will dismiss Plaintiff's claims against Weinberger because it lacks jurisdiction over them. Finally, Plaintiff also filed two motions inappropriately designated as emergencies—the Court will deny them as moot. (ECF Nos. 4, 23; 11, 24 (responses); 16, 25 (replies).) The Court has reviewed all of the briefing the parties filed.

///

## II. PLAINTIFF'S ALLEGATIONS AGAINST HERNDON

The Court finds that Plaintiff lacks Article III standing to pursue his claims against Herndon. Because amendment would be futile, the Court will dismiss Plaintiff's claims against Herndon with prejudice.

### A. Background

Plaintiff and his associate Gary Walters ("Walters") are trying to get a certificate of deposit ("COD") allegedly worth more than ten million dollars back from Walters's former attorney, who refused to give it to them. (ECF No. 1 at 4-5.) Walters allegedly told Plaintiff that Plaintiff could have 25% of the value of the COD if they were able to get it back. (*Id.* at 4.) Walters's former attorney allegedly has the COD because the former attorney represented Walters in a criminal case involving financial crimes that resulted in Walters's conviction. Plaintiff and Walters tried various methods to get the COD back, but these attempts were apparently unsuccessful. One of their methods involved filing a civil case in Nevada state court as *pro se* co-plaintiffs. (*Id.* at 5.) Plaintiff is not an attorney.

Herndon presides over Walters's criminal case in Nevada state court—Walters is on parole related to the various financial crimes mentioned above. (*Id.* at 4; *see also* ECF No. 1-1 at 20-21.) Plaintiff was not involved as either a party or an attorney in this criminal case against Walters. But in the criminal case, Walters twice filed a motion seeking to get the COD back from his former attorney. (ECF No. 1 at 4-5.) Herndon held a hearing in the criminal case on Walters's second motion seeking his COD on January 18, 2018 (the "Hearing"). (*Id.* at 6.) Plaintiff, perhaps because he had helped Walters draft the motion, or because he was interested in the COD, or both, attended the Hearing.

At the Hearing, which primarily consisted of a conversation between Herndon (from the bench) and Walters, Plaintiff repeatedly tried to make comments on the record by approaching the microphone. Herndon allegedly told Plaintiff from the bench that Plaintiff could not make a record because he was not a party to the case or an attorney. When Plaintiff persisted, Herndon allegedly told Plaintiff he was acting like an "asshole," to sit down, and to be quiet. (ECF No. 1 at 24-27.) Plaintiff then sat down. However, Plaintiff

2

1    continued to make distracting movements from the gallery, so Herndon ejected him from
2    the courtroom. (ECF No. 1-1 at 24-25.)
3        This interaction at the Hearing allegedly caused Walters to disassociate himself from Plaintiff, both in the civil case they filed together seeking the COD, and more generally. Plaintiff is apparently concerned that Walters will no longer give him 25% of the value of the COD if Walters is able to recover it. (ECF No. 1 at 32.) Plaintiff also alleges that Walters has forbidden him from talking with other stockholders of Apache Mill Tailings ("AMT")—Plaintiff is allegedly a stockholder—which will cause the value of Plaintiff's AMT stock to fall because Plaintiff will no longer be able to provide AMT with the valuable advice he had been providing. (*Id.* at 31-32.) Plaintiff also asserts that Herndon violated a variety of his constitutional rights at the Hearing by preventing him from speaking on the record. (*Id.* at 33-51.) More generally, Plaintiff appears to seek a declaratory judgment that Herndon was wrong to prevent Plaintiff from speaking at the Hearing. (*Id.* at 47-48.) Plaintiff contends that such a declaratory judgment will show Walters that Walters should continue to associate with Plaintiff—which would perhaps entitle Plaintiff to 25% of the value of the COD that Walters allegedly promised him and convince Walters to permit Plaintiff to speak to other shareholders of AMT again. Plaintiff sues Herndon under 42 U.S.C. § 1983. (*Id.* at 2.)

### B.     Legal Standard

While Herndon phrases his motion to dismiss Plaintiff's claims against him as a 12(b)(6) motion to dismiss for failure to state a claim, his lead argument is that Plaintiff lacks Article III standing to sue. (ECF No. 10 at 4.) Article III standing is a jurisdictional issue properly addressed in a 12(b)(1) motion to dismiss. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). Therefore, the Court discusses the 12(b)(1) legal standard below, not 12(b)(6).

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under Rule

12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984-85 (9th Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

Federal courts are courts of limited jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist at the time an action is commenced. *See Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004).

**C.     Standing**

Herndon argues that Plaintiff lacks standing to sue over the events that took place at the hearing in Walters's criminal case. (*See* ECF No. 10 at 2.) Herndon more specifically argues Plaintiff lacks standing because his allegations regarding the events at the Hearing: (1) do not demonstrate a particularized injury; (2) any speculative harm he alleges cannot be traced to Herndon's conduct; and (3) Plaintiff's claims are too speculative to be redressable, as their potential resolution depends on the actions of third parties. (*Id.* at 5-8.) The Court agrees with Herndon that Plaintiff has failed to plead a cognizable injury that would create a case or controversy.

Whether a plaintiff has standing depends on whether a plaintiff has fulfilled the "case or controversy" requirement of Article III. To satisfy Article III, a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative,

that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). In that event, the suit should be dismissed under Rule 12(b)(1). *See Maya*, 658 F.3d at 1067.

Mindful of the fact that the Supreme Court has "instructed the federal courts to liberally construe the 'inartful pleading' of *pro se* litigants," *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), the Court will view Plaintiff's pleadings with the appropriate degree of leniency. But even viewing Plaintiff's pleadings with maximum leniency, Plaintiff has failed to meet his burden of showing this Court has jurisdiction over his grievance against Herndon. First, Plaintiff does not have a constitutional right to interrupt court proceedings he is not involved in. And Plaintiff has cited no law to suggest that he does. Second, Plaintiff's allegations of financial harm flowing from Herndon's actions at the Hearing are too speculative to constitute a concrete and particularized harm. Inferring that Herndon telling Plaintiff to be quiet at the Hearing will cause Plaintiff to lose 25% of ten million dollars and some amount in the value of AMT stock requires a long and simply implausible series of logical leaps. Third, Plaintiff's alleged harm is simply not redressable. It appears Plaintiff seeks a declaratory judgment that Herndon was wrong to convince Walters to associate with Plaintiff again. But no order of this Court could compel Walters, even if he was a party to this case, to associate socially with Plaintiff, or do business with him. In sum, Plaintiff has not demonstrated—and cannot demonstrate—he has standing to maintain his case against Herndon.[1]

---

[1] Herndon also argues he is entitled to absolute judicial immunity because he had jurisdiction over the Hearing, and was engaging in a judicial act when he exercised control over the Hearing by telling Plaintiff to be quiet and eventually ejecting him from the Courtroom. (ECF No. 10 at 8-10.) Plaintiff argues that judicial immunity does not apply here. (ECF No. 15 at 11-16.) It is well established that judges who perform judicial

5

**D.     Leave to Amend**

When, as here, the Court grants a motion to dismiss, it must then decide whether to grant leave to amend. The Court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). This is such a case. The deficiencies in Plaintiff's complaint cannot be cured through amendment because they arise from the very nature of his lawsuit. Plaintiff cannot establish he has standing under these facts, or any consistent facts. Thus, amendment would be futile. The Court will dismiss Plaintiff's claims against Herndon with prejudice.[2] *See Righthaven LLC v. Newman*, 838 F. Supp. 2d 1071, 1076 (D. Nev. 2011) (dismissing case with prejudice for lack of standing where amendment would have been futile).

///

///

---

functions are immune from suit. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) (per curiam). Therefore, even assuming that Herndon was acting out of bad faith or malice when he told Plaintiff to sit down and be quiet, Herndon would be protected by the judicial immunity doctrine because Plaintiff's claims stem from Herndon's alleged conduct undertaken in Herndon's official capacity during the Hearing. *See id.* at 11. However, the Court does not decide Herndon's judicial immunity argument because it will dismiss Plaintiff's claims against Herndon for lack of standing. *See Wages v. I.R.S.*, 915 F.2d 1230, 1234 (9th Cir. 1990) (stating that "a judge who concludes that subject matter jurisdiction is lacking has no power to rule alternatively on the merits of a case.")

[2]The fact that Plaintiff represents himself does not change this analysis. The Court may dismiss even a *pro se* complaint where, as here, it is clear that allowing a plaintiff an opportunity to amend would be futile. *See Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1012 (9th Cir. 2011), *as amended* (Aug. 19, 2011).

## III. PLAINTIFF'S ALLEGATIONS AGAINST WEINBERGER

The Court will also *sua sponte* dismiss Plaintiff's claims against Weinberger because Plaintiff lacks standing to bring them. Plaintiff has also made no showing this Court has personal jurisdiction over Weinberger.

### A. Background

Plaintiff alleges he is an investigative journalist. (ECF No. 1 at 9, 10.) In that capacity, Plaintiff decided to investigate the death of the actor Gene Wilder. (*Id.* at 15.) Plaintiff read some news reports stating that Gene Wilder died of complications of Alzheimer's disease. (*Id.* at 8.) Plaintiff suspected this was not true, so he got a copy of Gene Wilder's death certificate from Connecticut. (*Id.* at 44.) The death certificate allegedly says Gene Wilder died of renal failure. (*Id.* at 8, 15.) Weinberger signed the death certificate. (*Id.* at 8.) Plaintiff called Weinberger's office in Connecticut and requested that Weinberger publicly state Gene Wilder died of renal failure to help Plaintiff's campaign to correct what Plaintiff considers the false story that Gene Wilder died of Alzheimer's disease. (*Id.* at 9.) Someone from Weinberger's office declined. (*Id.*) Plaintiff accordingly seeks a declaratory judgment that Gene Wilder died of renal failure and not complications from Alzheimer's disease, or any other illness. (*Id.* at 51.)

Weinberger has not appeared in this case, though Plaintiff filed proof of service in the form of an affidavit by a process server stating that Weinberger was served with a summons and copy of the Complaint. (ECF No. 19.) The Clerk of Court entered Weinberger's default on July 27, 2018. (ECF No. 21.)

### B. Discussion

The Court will *sua sponte* dismiss Plaintiff's claims against Weinberger for several reasons. First, Plaintiff lacks standing to sue Weinberger because he cannot establish any injury in fact based on Weinberger's office declining to help Plaintiff in a campaign to educate the public about the cause of Gene Wilder's death. *See Friends of the Earth*, 528 U.S. at 180 (stating that injury in fact is required to establish standing). Further, Weinberger cannot redress Plaintiff's perceived harm—that some people may think Gene

1  Wilder died of complications of Alzheimer's disease—because a public statement from
2  Weinberger would not necessarily sway universal public opinion, to the extent there is
3  such a thing with respect to the cause of Gene Wilder's death. *See id.* at 181 (stating that
4  redressability is another required element of standing). Thus, Plaintiff lacks standing.

5  Second, all of the evidence and argument Plaintiff has presented thus far regarding
6  Weinberger suggests that Weinberger lives and works in Connecticut. (ECF No. 1 at 10,
7  11; *see also* ECF No. 19.) Plaintiff has provided no evidence that Weinberger has any
8  connection whatsoever to Nevada. The Court will not exercise personal jurisdiction over
9  Weinberger in the absence of any evidence that doing so would be appropriate. *See Wood*
10 *v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1518, 1522 (9th Cir. 1983)
11 (affirming District of Nevada's *sua sponte* dismissal of out-of-state defendants over whom
12 the court presumably lacked personal jurisdiction).

13 Therefore, this Court has no jurisdiction over Plaintiff's claims against Weinberger
14 or personal jurisdiction over Weinberger. The Court will dismiss claims against Weinberger
15 without prejudice.

## IV.  CONCLUSION

17 The Court notes that the parties made several arguments and cited to several cases
18 not discussed above. The Court has reviewed these arguments and cases and determines
19 that they do not warrant discussion as they do not affect the outcome of the pending
20 motions.

21 It is therefore ordered that ordered that Herndon's motion to dismiss (ECF No. 10)
22 is granted. Plaintiff's claims against Herndon are dismissed with prejudice.

23 It is further ordered that Plaintiff's claims against Weinberger are dismissed without
24 prejudice for lack of subject matter jurisdiction and personal jurisdiction.

25 It is further ordered that Plaintiff's motion for summary judgment (ECF No. 4) is
26 denied as moot.

27 It is further ordered that Plaintiff's motion for leave to file a supplement to his motion
28 for summary judgment (ECF No. 23) is denied as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 22nd day of October 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE